Yes, Your Honors, again, Ina Lipkin on behalf of the petitioner. This is another case, immigration matter, that the board had affirmed the IJ's denial. Some of the issues here are whether the petitioner had in fact established a nexus on one of the enumerated grounds of persecution and whether he could relocate. However, in this case, both the IJ and the board completely ignored a Ninth Circuit precedent, wherein even if a petitioner does relocate and here lives in hiding, as he did in this case, this is not a reason to find that he could relocate, especially if the government was the entity persecuting him, as persecution is then presumed to be countrywide. And oddly enough, the board repeated the IJ's mistake by saying, well, he relocated to his uncle's house, so he could stay there. However, the petitioner had clearly testified, though he lived with his uncle in the state of Haryana, which is adjacent to the Punjab, he felt like he was living in, quote, unquote, a cell, and that eventually his uncle kicked him out because he himself was afraid that if the police found out that he was harboring the petitioner, he would be arrested. That clearly shows he could not relocate safely to another place. Also, in this matter, the IJ agreed that the petitioner, quote, testified pretty consistently, unquote. But oddly enough, he did not meet his burden of showing he was persecuted. The IJ engaged in speculation and conjecture to find that the incidents of harm that the petitioner suffered did not establish a nexus. However, just because the petitioner was not a member of a political group did not mean that he, that the police did not impute a political opinion on him. The police specifically called him a Khalistani, which is someone who supports the independent Sikh state of Khalistan, a concept viewed as anti-national by the police and Indian government. This was in and of itself enough to show an imputed political opinion, and they wouldn't have targeted him unless he was a Sikh, and therefore he established that he was targeted on account of his Sikhism. If he was a Hindu, he presumably would not be interested in Khalistan, and they wouldn't have accused him of that. The IJ also stated that because his family lives unharmed, he can go back. They didn't have any problems, so he wouldn't have any problems. The IJ completely failed to address the fact that his other family members were not similarly situated to him. And therefore, even if they did not have any other problems, that doesn't mean that he wouldn't have problems. However, he stated that he's in contact with his father, who tells him that the police continue to look for him. So therefore, he established there, at least subjectively, that the police do maintain a continued interest in him. I think I'll save my questions for rebuttal. Ms. Clay? Please bear with me. This is my first oral argument. I'm brand new with the Office of Immigration and Litigation. You've got a soft voice. You have to bellow into the microphone if you're going to be heard by this Court. Okay, Your Honor. As a preliminary matter — Welcome to the Ninth Circuit. Thank you. I've been told about this Court. As a preliminary matter, since the Board did not expressly adopt the IJ's adverse credibility finding, I will proceed today as if the facts and evidence are true. Respondent's argument or position is that the Court should affirm the Board's decision because substantial evidence supports the Board's determination that Petitioner has mistreatment during his arrest in 1992 and 1998 were due to an imputed political opinion. The evidence actually demonstrates that the arrests were due to criminal investigations. Why shouldn't the IJ have done a mixed motive analysis? Why shouldn't they have done? Yes. I mean, it seems to me this is a mixed motive case, that you may have a criminal prosecution, but they also may have motives that were more connected and had an access to one of the protected grounds. That is true, but apparently the IJ looked at the evidence in the record and determined that they didn't believe that there was a mixed motive in this case. How could there not have been a mixed motive here? Because surely it is not an ordinary part of Indian investigations to hold people over a course of many days and beat them. I'm sorry, Your Honor. Could you repeat that, please? Yes. What evidence do we have that this is a criminal investigation rather than a political persecution when the police have detained Gurdial Singh on two different occasions over the course of multiple days and they have beaten and tortured him? Well, again, the IJ's decision was based on the imputed political opinion, and the reason why the IJ found differently is because during the 1992 arrest, Petitioner was actually in the presence of a known militant or insurgent who happened to be his friend. Right, and the police claimed that he was a Khalistani. Well, the evidence, well, the... They claimed that his friend was a Khalistani. Right. His testimony isn't clear about when they actually stated that he was Khalistani. He suggested that they said that, but he didn't indicate whether it was during... But we are saying his testimony is true today, isn't that what you told us? Yes, but he didn't say that that was his testimony during the 1992 arrest. During the 1992 arrest, they actually only questioned him about the behavior of his friend. He was never accused of any criminal allegations at all at that time. And that is the Petitioner's testimony. Why does that help you? I mean, it seems to me that we have a case law that basically says if you're not accusing him of a crime at all, that you presume it's political. Well, actually, this court has recently held in D.U.V. Ashcroft that you're no longer entitled to that presumption. Under D.U.V. Ashcroft, the question becomes whether or not the Petitioner has established whether the purported criminal investigation had no bona fide objective. Right. That being the case, the presumption that police harassment is politically motivated arises only where there appears to be no other logical explanation, not that there has to be evidence. Here, the I.I.J. determined that there was another logical explanation for his arrest. That being the case, even assuming a mixed motive, substantial evidence would suggest that this court affirmed the board's decision because as long as there's one other explanation for his arrest or his mistreatment, deference goes to the government. But does that really indicate that the I.I.J. should have done a mixed motive analysis here? I mean, the I.I.J. didn't do a mixed motive analysis at all. Because he didn't find there was a mixed motive. So your argument is, well, they had one legitimate reason, then they might not have had another legitimate reason. Now, the I.I.J. opinion would be a lot stronger if the I.I.J. had actually analyzed that, but I don't see any mixed motive analysis here at all. So wouldn't the proper remedy be to send it back? Well, yes, that would be the alternative. You could send it back also for an adverse credibility determination from the board as well. Can I ask you, do you know about Calistan? I do from the record. What I do know. What have you learned? Excuse me? What have you learned about Calistan from the record? What have I learned? Well, I've learned that it's sort of implied in the record that there is a distinction between individuals who are Calistani. I'm sorry, I can't hear you. There is a distinction between individuals who are Calistani who exercise peaceful means in terms of acquiring their separate states. Calistan. Calistan. It's the name that's been attributed to individuals who are of the Sikh religion who are seeking a separate state. But the individuals... You know a little bit. The I.I.J. didn't seem to know much. But the I.I.J. did determine that there was a difference between those individuals who were considered militant and those... You know, I've read that record, and I'm just telling you. He didn't seem to know that we had many cases recognizing that there was an independent party working for the independence of Calistan, which means the country of the pure. The Sikhs wanted to go to the country of the pure. Their old country, which existed in the 17th and 18th and into the 19th century. So like most of these movements, it's partly political and partly terrorist. And so the police have this problem. Who are the terrorists? Who are just the sympathizers? But they reach out and grab the people that they can. One astonishing thing that the I.I.J. says, the police didn't condone the beating. How could he have said that? The police beat him. That's true. And the board's decision wasn't based on the mistreatment. It was based on whether or not it was based on an imputed political opinion. I'm sorry, you're mumbling, as far as I know. That is true. But the board has not addressed the mistreatment itself. The board simply addressed whether or not the mistreatment was based on the imputed political opinion. The I.I.J. itself did admit that he believed that the mistreatment he received was, in fact, torture. The question before this panel at this time is determined whether or not it was based on an imputed political opinion. I think you perhaps agree with me, but you don't then have the reaction I do. The I.I.J. who finds the police torture him then says, but the police did not condone it. How could somebody say that unless he wasn't really functioning? I mean, it makes me very skeptical of the I.I.J. I understand, but the rules actually state that in order for you to establish torture, you must consider the person's ability to relocate as well as incidents of past torture. In evaluating the record, the I.I.J. apparently made the determination that his ability to relocate for 11 months from May 10th before he came to the United States and essentially about 11 months after the actual second arrest, tended to show that he was not likely to be tortured. Go ahead. Counsel, just run the theory one more time. What's the problem with the I.I.J.? Because the BIA does not adopt the adverse credibility finding from the I.I.J., what are the BIA's grounds then for? That he did not establish an imputed political opinion. The fact that the petitioner contended that he was credible, that he had never admitted to involvement with militants, that he disavowed the activities, does not entitle him to the presumption that his arrest was based on a political opinion. He actually bore the burden of establishing that there was no bona fide objective. What the I.I.J. determined was that looking at the facts of the case, that the police had a lawful investigation going on, because in fact there was a lot of militancy going on in that area, in that region, and he was caught in the presence of a known militant who had had four prior arrests. Right, but they hang him from the ceiling, they torture him for three days, and he says, I'm not a member of the militant group, and they call him Khalistani. How can you not say that there's enough evidence in the record that there's a mixed motive, that they are not investigating necessarily a criminal action, but in fact it has some political motivation? Well, this court has actually held that so long as the police are trying to find evidence of criminal activity, neither the length of the investigation or the fact that they are pursuing suspects believed to be innocent, nor the unsavoriness of their tactics gives rise to the inference of political persecution. It is only where there appears to be no other logical reason for the persecution at issue for the immigration judge to draw the inference that the police investigation is a subterfuge for political harassment. So what crime had his friend committed? Well, his friend had been arrested on several occasions for militancy or being an insurgent. But there was no crime associated with this particular case? And he wasn't accused of a crime. He was asked about his friend's activities during his first arrest. There was no criminal allegations alleged against that individual. That's the hard part of the case, is if there's some legitimate criminal investigation going on here, then we'd like to know what the evidence of that is. But the only evidence that we have is that he was picked up because he happened to be with a friend who was militant, who was later killed by the police. Well, a logical inference from that is that if it was just simply the presence of being around Shingara, who was his friend, then why hasn't there been evidence in the record that shows that other individuals who have been in his presence have been arrested? From that inference, you can determine that possibly he was, it was his friendship with Shingara that suggested that he knew evidence of Shingara's activities, and not the fact that he was Calisthani or the fact that he was Sikh. And then you have the fact that... Even the record is that the police are accusing him of being a Calistani during this period where they're torturing him and so forth. Well, at the administrative record at page 81, he said that he was simply asked about his friend's companion's activities. He was never questioned about his own. That suggests that it was a lawful, legitimate criminal investigation. No, it's not just that that's a lawful criminal investigation. If he was asked whether his friend robbed banks, if he was asked whether his friends possessed illegal weapons, if he asked if his friend robbed people, all of those things would be evidence of a criminal investigation. Do you have anything in there to suggest that they were investigating criminal activities? They were investigating the activities of his friend, who was a known... Right. And do we have any evidence that the activities that they were investigating of his friend were criminal activities as opposed to political activities? I think the answer to that is no, isn't it? I'm not certain. I didn't... I can't help, since you abused the phrase, a lawful criminal investigation. The Indian police are not authorized by any law to torture people. There's no doubt in this case they tortured him. It was an unlawful criminal investigation. You could at least say that. That's true. Not give it a totally misleading name. It was a kind of criminal set of acts by the police. Do you agree? Yes, I do agree. I do agree that it was a criminal, I mean, that he was, in fact, tortured. We've taken up your time with our questions. Do you want to say anything in conclusion? Well, what I would like to say is that petitioner bared the burden of establishing that the criminal investigation had no bona fide objective, and the evidence that he has alleged that his being innocent does not establish that it wasn't a bona fide objective. Should this court determine that the board should have addressed the mixed motive issue or, in fact, had determined the past persecution presumption, that the case be remanded back to the board for determination on those two issues? Thank you very much. Thank you. Your Honors, just real quick to follow up. Regarding the issue of mixed motives, we argued in our brief that mixed motives were established. On the one hand, the police demanded monetary bribes for two of his arrests in order to be released, 20,000 rupees and 40,000 rupees, respectively. That alone shows that there was a mixed motive. Well, the mixed motive then suggests that, yeah, there was just corruption on the part of the police, but it doesn't answer the question whether the police arrested him because of his political activities or whether they arrested him because they were engaged in a criminal investigation. I think that's the mixed motive that the court has been referring to. Mixed motives that they arrested him because they saw an opportunity to get somebody to come in and pay them a bribe I think is the wrong kind of motive to help your client. Well, in addition to what I've just stated. I mean, that's common in these cases, too, because we see a lot of them that that's how people are released, they pay a bribe in the poon job anyway. Except that here, I think during all three arrests, he was accused of being a Khalistani. And during the second and third arrests, he wasn't with the suspected front. He wasn't with anybody. They just came to his house, made some accusations that he was helping militants, and then interrogated and tortured him for several days on these completely unfounded suspicions. That clearly shows they thought he had a political opinion. Unfortunately, he did not. Counsel, if we agreed with you, the government counsel suggesting that we ought to remand this to the board for further findings. Do we need to remand this to the board if we agree with you? I don't think that you do, because the board specifically stated that even if he was found credible, that he didn't establish the nexus. And we just argued that he did. So if this court agrees with the argument that he did establish a nexus and he cannot relocate because the government did not present any evidence to rebut a well-founded fear or to show evidence that he individually can relocate. Therefore, he has fulfilled his burden. So I think that if it's remanded, it should be with instructions to grant, because he has met his burden. Thank you, counsel. Thank you.
judges: Noonan, Thomas, Bybee